UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ECIGRUSA, LLC d/b/a WORLDWIDE VAPE DISTRIBUTION; ADDISON VAPOR LLC d/b/a ARTISAN VAPOR & CBD ADDISON; AF VAPOR LLC d/b/a ARTISAN VAPOR & CBD DALLAS; <br><br> and <br><br> SMOKE SCENE LUBBOCK, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> KELLY HANCOCK, in his official capacity as Acting Comptroller of Public Accounts for the State of Texas, <br><br> Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§  Civil Action No. 3:26-cv-00254<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## PLAINTIFFS' VERIFIED COMPLAINT

Plaintiffs ECIGRUSA, LLC d/b/a Worldwide Vape Distribution ("Worldwide"), Addison Vapor LLC d/b/a Artisan Vapor & CBD Addison ("Artisan Addison"), AF Vapor LLC d/b/a Artisan Vapor & CBD Dallas ("Artisan Dallas"), and Smoke Scene Lubbock, LLC ("Smoke Scene"), file this verified complaint for declaratory and injunctive relief against Defendant Kelly Hancock, in his official capacity as Acting Comptroller of Public Accounts for the State of Texas. Plaintiffs allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs bring this complaint for a declaratory judgment and to temporarily, preliminarily, and permanently enjoin Defendant Hancock from enforcing a provision of Texas Senate Bill 2024 ("S.B. 2024") that amends Texas Health & Safety Code § 161.0876 to prohibit

1

the advertisement, marketing, sale, and offering for sale of electronic nicotine delivery system ("ENDS") products containing e-liquid that is wholly or partially manufactured in or marketed as being manufactured in China or in any other country designated as a foreign adversary by the United States Secretary of Commerce under 15 C.F.R. § 791.4. This provision, codified at Texas Health & Safety Code § 161.0876(b)(3), violates the Foreign Commerce Clause of the United States Constitution and the First Amendment. Because the provision facially discriminates against the subject goods based on the country of origin of a component thereof and unlawfully restricts commercial speech that is not false, deceptive, or misleading, the provision is *per se* invalid. Moreover, Defendant Hancock's implementation of the provision against Plaintiff Worldwide has violated Worldwide's due process rights under the Fourteenth Amendment to the United States Constitution.

## THE PARTIES

2.    Plaintiff Worldwide is a Texas limited liability company that is a wholesale distributor of ENDS products located at 10601 King William Drive, Dallas, Texas 75220.

3.    Plaintiff Artian Addison is a Texas limited liability company that is a retailer of ENDS products it purchases from Plaintiff Worldwide. Artisan Addison is located at 4980 Belt Line Road, Suite 130, Addison, Texas 75254.

4.    Plaintiff Artisan Dallas is a Texas limited liability company that is a retailer of ENDS products it purchases from Plaintiff Worldwide. Artisan Dallas is located at 4404 Lemmon Avenue, Dallas, Texas 75219.

5.    Plaintiff Smoke Scene is a Texas limited liability company that is a retailer of ENDS products. Smoke Scene is located at 2718 50th Street, Lubbock, Texas 79413

6.      Defendant Kelly Hancock, who is sued in his official capacity, is the Acting Comptroller of Public Accounts for the State of Texas. His office is located at 111 East 17th Street, Austin, Texas 78774. Defendant Hancock is charged with enforcement of Texas Health & Safety Code § 161.0876(b)(3) pursuant to Texas Health & Safety Code § 161.088, which provides, *inter alia*, that the Comptroller "shall enforce this subchapter in partnership with local law enforcement agencies" and authorizes the Comptroller to "enter into agency contracts with other state agencies" so that those agencies "may assist the [C]omptroller in the administration and enforcement of this subchapter."

## JURISDICTION, VENUE, AND STANDING

7.      This action arises under and asserts claims based on the United States Constitution. The Court therefore has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

8.      The Declaratory Judgment Act authorizes the Court to grant Plaintiffs' request for declaratory relief. 28 U.S.C. §§ 2201-2202. Plaintiffs Worldwide, Artisan Addison, Artisan Dallas, and Smoke Scene are Texas businesses subject to enforcement under S.B. 2024.

9.      Because this action seeks to enjoin Defendant Hancock from implementing and enforcing a state statute that violates the United States Constitution and the First Amendment thereto and, as described herein, Defendant Hancock has (i) refused to agree to refrain from enforcing Texas Health & Safety Code § 161.0876(b)(3); (ii) actually enforced Texas Health & Safety Code § 161.0876(b)(3) against Plaintiffs Worldwide, Artisan Addison, and Smoke Scene by assessing them a civil penalty for alleged violations thereof; (iii) threatened to further enforce Texas Health & Safety Code § 161.0876(b)(3) against Plaintiff Worldwide, Artisan Addison, and Smoke Scene through the arrest of their employees and referral for criminal charges; and (iv) both threatened to and actually enforced Texas Health & Safety Code § 161.0876(b)(3) against other

3

retailers throughout the State of Texas that are similarly situated to Plaintiff Artisan Dallas, including Plaintiffs Artisan Addison and Smoke Scene, the Eleventh Amendment to the United States Constitution does not prohibit this Court from exercising subject matter jurisdiction over and deciding this action. *See Ex Parte Young*, 209 U.S. 123, 159-60 (1908).

10.     This Court has personal jurisdiction over Defendant Hancock in his official capacity because he is the state official responsible for enforcing Texas Health & Safety Code § 161.0876(b)(3) and his office is in Texas.

11.     Venue is properly laid in this district pursuant to 28 U.S.C. § 1391(b)(2) because this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred and in which a substantial part of the property that is the subject of the action is situated.

12.     Plaintiffs have Article III standing to pursue the claims asserted herein. To establish Article III standing, a plaintiff must show that (i) it has suffered an injury in fact; (ii) the injury is fairly traceable to the challenged conduct; and (iii) the injury will likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S 555, 560-61 (1992). A plaintiff can establish standing "when suit is brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, by establishing actual present harm or a significant possibility of future harm.*" City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019). As explained herein, Plaintiffs have suffered an injury in fact, as the Comptroller has cited Plaintiffs Worldwide, Artisan Addison, and Smoke Scene for violations of Texas Health & Safety Code § 161.0876(b)(3) and has refused to renew Plaintiff Worldwide's tobacco distributor's permit based on Plaintiff Worldwide's alleged violation of the provision even though the Comptroller has failed to allow Worldwide a hearing on the charge in violation of Worldwide's due process rights. Plaintiff Artisan Dallas purchases its ENDS products

from Plaintiff Worldwide, and so its supply of merchandise is threatened both by the Comptroller's enforcement activity against Worldwide and by the threat of the Comptroller taking civil and/or criminal enforcement activity directly against Artisan Dallas and its employees. The Comptroller has also explicitly threatened Worldwide, Artisan Addison, and Smoke Scene with the arrest of their employees and referral for misdemeanor charges if they do not remove ENDS products that violate Texas Health & Safety Code § 161.0876(b)(3) from their shelves.

13.    Plaintiffs also have a legally protected, or cognizable, interest in selling ENDS products that violate the terms of Texas Health & Safety Code § 161.0876(b)(3) because among the products Plaintiffs stock and sell which they believe may violate section 161.0876(b)(3) are ENDS products that are the subject of FDA marketing authorization orders issued under 21 U.S.C. § 387j, including JUUL- and VUSE-branded ENDS products, as well as vaping products that contain no nicotine, but so are not subject to FDA's premarket authorization requirement because they do not constitute "tobacco products" under the Federal Food, Drug, and Cosmetic Act, *see* 21 U.S.C. §§ 321(rr); 387a(b), but which are nonetheless prohibited by section 161.0876(b)(3) because they contain a "consumable liquid solution or other material aerosolized or vaporized during the use of an electronic cigarette." Texas Health & Safety Code § 161.0876(a).

14.    The injuries Plaintiffs are suffering are fairly traceable to Defendant Hancock's conduct, as it is Texas State Police operating under the auspices of the Office of the Comptroller that are conducting the inspections of Plaintiffs and issuing the citations for civil penalties and threats of criminal prosecution.

15.    Plaintiffs' injuries will be redressed by a declaratory judgment and temporary, preliminary, and permanent injunctive relief barring Defendant Hancock from enforcing Texas Health & Safety Code § 161.0876(b)(3).

## FACTS

**A.    The Modern Electronic Cigarette was Invented in China and Most are Manufactured in China.**

16.    Electronic nicotine delivery system products, also known as electronic cigarettes or "e-cigarettes," are alternatives to smoking deadly combustible cigarettes that are far less harmful because they do not contain tobacco, involve combustion, or generate smoke, tar, or ash. Instead, ENDS products use a battery-powered heating element to heat and aerosolize a nicotine-containing solution, called "e-liquid," for the user to consume nicotine without the harmful effects of combustion.

17.    The first modern electronic cigarette to be successfully commercialized was invented in China in 2003 by Hon Lik, a pharmacist, who sought a way to quit smoking traditional, combustible cigarettes after his father died of smoking-related lung cancer and Hon's own attempts to quit using nicotine patches were unsuccessful.

18.    Today, virtually all electronic cigarette devices sold worldwide, and a significant portion of the e-liquids used in them, are manufactured in China. All or virtually all ENDS products on the market today are wholly or in large part manufactured in China. Most of the American and Texas small businesses that sell and the majority of American consumers who use ENDS products, sell or use ENDS products containing e-liquid also made in China or at least some of the ingredients of which are made in China.

**B.    The Foreign Commerce Clause of the United States Constitution Provides Congress the Power to Regulate Commerce with Foreign Nations and Prohibits State Regulation that Facially Discriminates Based on Country of Origin.**

19.    "The Congress shall have Power … [t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const., art. I, § 8, cl. 3.

20.    Because the federal Constitution gives Congress the exclusive power to regulate

commerce with foreign nations, the Supreme Court and lower federal courts have long held that state laws that facially discriminate against foreign commerce are *per se* invalid, even if the discriminating state's economy does not directly benefit from the discrimination. *See*, *e.g.*, *Kraft Gen. Foods, Inc. v. Iowa Dep't of Revenue and Finance*, 505 U.S. 71, 79, 81 (1992) ("Absent a compelling justification . . . a state may not advance its legitimate goals by means that facially discriminate against foreign commerce.").

21.     Such facial discrimination is prohibited because country-of-origin discrimination is an impermissible exercise of state power in a realm reserved for the federal government. *See, e.g., Barclays Bank Plc v. Franchise Tax Bd.*, 512 U.S. 298, 311, 114 S. Ct. 2268, 2275 (1994) ("In the unique context of foreign commerce, a State's power is further constrained because of the special need for federal uniformity."); *National Foreign Trade Council v. Natsios*, 181 F.3d 38, 67 (1st Cir. 1999) ("Supreme Court decisions under the Foreign Commerce Clause have made it clear that state laws that are designed to limit trade with a specific foreign nation are precisely one type of law that the Foreign Commerce Clause is designed to prevent.").

22.     The Fifth Circuit has laid out a test to determine whether a state statute violates the Foreign Commerce Clause: "'regulations that facially discriminate' against foreign commerce 'are virtually per se invalid,' and 'nondiscriminatory state regulations affecting foreign commerce are invalid if they (1) create a substantial risk of conflicts with foreign governments; or (2) undermine the ability of the federal government to 'speak with one voice' in regulating commercial affairs with foreign states.'" *United States v. Texas*, 719 F. Supp. 3d 640, 679 (W.D. Tex. 2024) (quoting *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 750 (5th Cir. 2006)).

**C.     Texas S.B. 2024 is Facially Discriminatory and Violates the First Amendment.**

23.     On June 20, 2025, Governor Abbott signed into law Texas Senate Bill 2024. S.B.

2024 amended Texas Health & Safety Code sections 161.0181 and 161.0876 and had an effective date of September 1, 2025. A true and correct copy of Texas S.B. 2024 is attached hereto as Exhibit A.

24.    S.B. 2024 amended Texas Health & Safety Code § 161.0876 and provides, in part, that a person commits an offense that is a Class A misdemeanor if that person "markets, advertises, sells, offers for sale, or causes to be sold an e-cigarette product . . . that is wholly or partially manufactured in or marketed as being manufactured in: (A) China; or (B) a country designated as a foreign adversary by the United States secretary of commerce under 15 C.F.R. Section 791.4."

25.    Besides China, the other countries designated as "foreign adversaries" under 15 C.F.R. § 791.4 are Cuba, Iran, North Korea, and Russia.

26.    Title 15 C.F.R. § 791.4, which is referenced in section 161.0876(b)(3)(B),  has nothing to do with the regulation of nicotine-containing products or tobacco products, or even with consumer health and safety more broadly, but rather with the Department of Commerce's regulation of the acquisition, importation, transfer, installation, dealing in, and use of information and communications technologies and services, including connected software applications, under Executive Order 13873 (entitled "Securing the Information and Communications Technology and Services Supply Chain") published on May 15, 2019. *See* 84 Fed. Reg. 22689; 15 C.F.R. §§ 791.1-791.7.

27.    For purposes of Texas Health & Safety Code § 161.0876(b)(3), S.B. 2024 defines an "e-cigarette product" as a "consumable liquid solution or other material aerosolized or vaporized during the use of an electronic cigarette or other device . . . , regardless of whether the liquid solution or material contains nicotine. The term does not include a prescription medication or other prescribed substance unrelated to the cessation of smoking."

8

28.     Texas Health & Safety Code § 161.0876(b)(3) thus makes it a crime for any person to market, advertise, offer for sale, sell, or cause to be sold in Texas an ENDS product that contains e-liquid partially or wholly manufactured in China or any country designated as a foreign adversary under 15 C.F.R. § 791.4.

29.     In addition to potential criminal charges brought by local district or county attorneys, if the agents or employees of a business commit violations of Texas Health & Safety Code § 161.0876, that business is also subject to suspension and potential revocation of its state tobacco permit and to the imposition of civil monetary penalties by the Comptroller under Texas Health & Safety Code § 161.0901.

30.     Texas S.B. 2024 facially discriminates against foreign commerce because it prohibits, under threat of arrest, criminal prosecution and conviction, civil monetary penalty, and/or suspension or cancellation of a business's e-cigarette retailer permit, the advertising, marketing, and sale of ENDS products (as well as other vaping products that do not contain nicotine) that contain e-liquid or even just e-liquid ingredients partially or wholly manufactured in China (as well as the other countries designated as "foreign adversaries" under 15 C.F.R. § 791.4).

31.     Because S.B. 2024 discriminates against ENDS and other vaping products containing e-liquid manufactured in China or in the countries designated as foreign adversaries under 15 C.F.R. § 791.4 by banning their advertising, marketing, sale, and offer for sale in the State of Texas, but not against other foreign-made tobacco products, such as cigarettes manufactured in China, or ENDS products containing e-liquid manufactured in whole or in part in the United States or in other foreign countries, S.B. 2024 violates the Foreign Commerce Clause of the United States Constitution.

32.     Because S.B. 2024 restricts protected commercial speech advertising or marketing

9

such products, even though such speech is not false, deceptive, or misleading, S.B. 2024 violates the First Amendment as applied to the states through the Fourteenth Amendment.

**D.    Texas is Not Acting as a Market Participant with Respect to S.B. 2024.**

33.    "When a state or municipality participates in the marketplace, rather than regulating commerce, the commerce clause does not control its actions." *New Orleans Steamship Ass'n v. Plaquemines Port, Harbor & Terminal Dist.*, 874 F.2d 1018, 1021 (5th Cir. 1989).

34.    However, the market participant exception to the general prohibition on state regulation of foreign commerce does not apply to S.B. 2024 because Texas is not acting as a market participant that is buying and/or selling ENDS or other vaping products, but rather is acting as an industry regulator by outright banning long-established foreign commerce.

**E.    Defendant Hancock's Enforcement of Texas S.B. 2024 Is Causing Plaintiffs Irreparable Injury and Threatens to Continue to Cause Them Such Injury.**

35.    Plaintiffs Worldwide, Artisan Addison, Artisan Dallas, and Smoke Scene have suffered and are continuing to suffer ongoing and irreparable injury as a result of Defendant Hancock's enforcement and threatened enforcement of S.B. 2024.

38.    Each of the Plaintiffs sells a wide variety of ENDS and other vaping products that they either know are prohibited by S.B. 2024 or which they believe, but are unable to verify, may be prohibited by S.B. 2024. These products include ENDS products with nicotine-containing e-liquid, including both products that have FDA marketing granted orders and products that do not yet have FDA marketing granted orders, as well as vaping products that contain e-liquid but do not contain nicotine, and so are not subject to FDA regulation as tobacco products. *See* 21 U.S.C. § 321(rr); 387a(b).

39.    A significant proportion of the sales of ENDS and other vaping products Plaintiffs make are of products that are made in China and thus contain e-liquids that these Plaintiffs know

or reasonably believe are manufactured in whole or in part in China.

41.    Plaintiffs also regularly advertise and market such products, including through online websites, email advertisements, and in-store marketing materials.

42.    Even if the whole of the e-liquid in the ENDS products sold by Plaintiffs itself is not manufactured in China, the e-liquids typically found in ENDS products contain multiple ingredients, typically including propylene glycol, vegetable glycerin, nicotine (either extracted or derived from tobacco or synthetically manufactured), and multiple flavoring ingredients, some or all of which are likely manufactured in a foreign country. Under the plain language of S.B. 2024, if even a single ingredient, such as a single flavor ingredient, was manufactured in China, sale of the entire ENDS product is prohibited.

43.    However, Plaintiffs have no way of knowing with certainty whether any particular ingredient contained in a product's e-liquid was manufactured in one of the countries banned under S.B. 2024 and, accordingly, whether by advertising, marketing, offering for sale, and selling that product Plaintiffs are violating S.B. 2024.

44.    Because S.B. 2024 was only enacted on June 20, 2025, and took effect recently on September 1, 2025, Plaintiffs collectively have hundreds of thousands of dollars' worth of inventory of ENDS and other vaping products purchased before June 20, 2025, which they either (i) know or reasonably believe contain e-liquids that were manufactured in whole or in part in China; or (ii) do not know for certain that every ingredient in the e-liquid was not manufactured in whole or in part in China.

45.    To ensure full compliance with S.B. 2024, Plaintiffs would be required to stop selling a large majority, if not all, of the ENDS and other vaping products that they currently sell to encompass both of these categories of products and to destroy or discard much of their current

inventories.

46.    To fully comply with S.B. 2024, Texas companies would also have to completely change their supplier networks. They would need to ensure that their suppliers either (i) set up new e-liquid manufacturing facilities in the United States that use only e-liquid ingredients that are not sourced from China and then export the U.S.-made e-liquid to China for filling into the electronic devices that are all manufactured there; (ii) procure e-liquids wholly made in other countries and ship them to China for filling into the electronic devices that are all manufactured there; and/or (iii) build new device manufacturing facilities or new device filling facilities in the United States. The lead time for any of these options to be scaled to the level required to meet the current demands of Texas vaping consumers is far greater than the approximately seventy days provided by S.B. 2024.

47.    Plaintiffs are suffering both ongoing and threatened future harm from the enforcement of S.B. 2024. Because the State of Texas and its employees enjoy sovereign immunity, Plaintiffs will never be able to recover monetary damages for the lost revenues and profits, destroyed and discarded inventory, and lost customer goodwill they will suffer if, to avoid criminal prosecution, civil penalties, or the suspension or loss of their e-cigarette retailer or tobacco distributor permits, they comply with S.B. 2024 and stop selling all ENDS and other vaping products other than those they definitively know contain e-liquid that was not manufactured in whole or in part in China or the other prohibited countries.

48.    Indeed, starting even before S.B. 2024's enforcement date, the specter of the looming prohibition on ENDS and other vaping products containing e-liquids made in whole or in part in China caused Plaintiff Worldwide and the retailer Plaintiffs to lose sales volumes, along with the attendant revenue and profits, from which their businesses pay their substantial operating

expenses.

49.     Since S.B. 2024 took effect on September 1, 2025, Plaintiff Worldwide and the retailer Plaintiffs' sales volumes and revenues have continued to fall well short of their sales volumes and revenues prior to the enactment of S.B. 2024.

50.     On or about August 29, 2025, Defendant Hancock's office issued an email in the form attached as <u>Exhibit B</u> to Texas ENDS retailers. The email summarized S.B. 2024 and advised retailers to "[p]lease review the legislation to ensure you comply with Texas law."

51.     On or about September 2, 2025, Defendant Hancock's office issued a similar letter to Texas ENDS retailers. A true and correct copy of the letter is attached hereto as <u>Exhibit C</u>.

52.     On or about September 16, 2025, an inspector from Defendant Hancock's office wearing a "State Police" windbreaker visited a smoke shop in Childress, Texas, that operates under the same "Smoke Scene" trading name as Plaintiff Smoke Scene. During the inspection, the inspector took an ENDS product off the shelf, checked the country of origin on the label, and advised the store's manager that "all the China products, as of right now, cannot be sold, as of September 1st. The law states that's a Class A. So, that's straight to jail right now." The inspector went on to threaten that if she returned in the near future and found "China products" still on the shelves, she would have the store manager arrested for violating Texas Health & Safety Code § 161.0876. In her inspection report, a true and correct copy of which is attached hereto as <u>Exhibit D</u>, the inspector wrote: "Advised on new law – remove China products."

53.     On October 23, 2025, a state police officer from Defendant Hancock's office issued a $500 penalty to a retailer in the Austin area for violating Texas Health & Safety Code § 161.0876(b)(3).

*Defendant Hancock's Enforcement Actions Against Plaintiff Worldwide*

54.    On November 18, 2025, a state police officer from Defendant Hancock's office inspected Plaintiff Worldwide and threatened to cite Worldwide for a violation of Texas Health & Safety Code § 161.0876(b)(3) and impose a civil penalty if Chinese-manufactured products were present at the time of the next inspection.

55.    On December 1, 2025, a state police officer from Defendant Hancock's office actually issued a notice of civil penalty of $1000 to Worldwide. A true and correct copy of the civil penalty notice is attached as Exhibit E.

56.    Plaintiff Worldwide responded to the notice of civil penalty by requesting a hearing on the alleged violation. To date, Defendant Hancock's office has failed to provide any notice of the date of such a hearing.

57.    Even though Worldwide has thus far been denied any right to a hearing on the alleged violation, on January 12, 2026, Defendant Hancock's office denied Plaintiff Worldwide's application to renew its tobacco product distributor's permit for the period from March 1, 2026, through February 28, 2027, because Worldwide had not simply paid the civil penalty. A true and correct copy of the January 12, 2026 letter to this effect from Defendant Hancock's office is attached hereto as Exhibit F.

58.    If Worldwide stops carrying the products that it believes are or may be prohibited by Texas Health & Safety Code § 161.0876(b)(3) in response to the civil penalty, Plaintiffs Artisan Addison and Artisan Dallas will either no longer be able to stock and sell those products or, to the extent the products are available from alternative suppliers, will have to do so at less favorable pricing, thereby reducing their associated profits.

59.    If Worldwide remains unable to renew its Texas tobacco products distributor's

permit when its current permit expires at the end of February 2026, it will be unable to sell a broad range of tobacco products to its customers and lose significant sales revenues, profits, and customer goodwill as a result. None of these losses will be compensable in monetary damages because of Defendant Hancock's and the State of Texas's sovereign immunity.

***Defendant Hancock's Enforcement Actions Against Plaintiff Artisan Addison***

60.     On January 9, 2026, a Texas State Police officer operating under the auspices of the Office of the Comptroller conducted an inspection of Artisan Addison. The officer cited the store for selling ENDS products with e-liquid or e-liquid ingredients made in China in violation of Texas Health & Safety Code § 161.0876(b)(3) and stated that selling products "manufactured out of China" was a "criminal offense," that he could have the store's employee arrested if the store continued to sell, and that he would issue a civil penalty to Artisan Addison for the violation.

61.     As a result of the explicit threat from the inspector from Defendant Hancock's office, Plaintiff Artisan Addison faces the dilemma of removing all vaping products that may contain e-liquid manufactured in China from its shelves so that its employees are not arrested and its permit is able to be renewed, thereby either foregoing substantial revenues and profits from sales of these products for which it cannot recover damages because of sovereign immunity or continuing to sell the products and risking the potential arrest of its employees.

62.     Like Plaintiff Artisan Addison, Plaintiff Artisan Dallas must either stop advertising, marketing, and selling products containing e-liquid manufactured in China and suffer lost revenues and profits for which it cannot recover monetary damages because of sovereign immunity or run the risk of potential civil penalties and/or criminal charges.

***Defendant Hancock's Enforcement Actions Against Plaintiff Smoke Scene***

63.     On January 7, 2026, two Texas State Police officers operating under the auspices

of the Office of the Comptroller conducted an inspection of Plaintiff Smoke Scene's store. The officers cited Plaintiff Smoke Scene for violating Texas Health & Safety Code § 161.0876(b)(3) and stated that this would be the last warning that Smoke Scene would receive. The officers stated words to the effect that, upon their next inspection, if Chinese-made vape products were still present, they could have an employee arrested for violating Texas Health & Safety Code § 161.0876(b)(3). A copy of the citation is attached hereto as Exhibit G.

64.     Plaintiff Smoke Scene thus faces the dilemma of removing all vaping products that may contain e-liquid manufactured in China from its shelves so that its employees are not arrested and its permit is able to be renewed, thereby either foregoing substantial revenues and profits from sales of these products for which it cannot recover damages because of sovereign immunity or continuing to sell the products and risking the potential arrest of its employees.

65.     In September 16 and 18, 2025, counsel for Plaintiffs, on behalf of clients in another case pending in the United States District Court for the Southern District of Texas, requested that Defendant Hancock enter into a written stipulation promising permanent non-enforcement of S.B. 2024 or produce a declaration or affidavit stating his permanent intent not to enforce S.B. 2024. Defendant Hancock declined to do so.

66.     Plaintiffs thus seek equitable relief in the form of temporary, preliminary and permanent injunctions that prohibit Defendant Hancock from enforcing Texas Health & Safety Code § 161.0876(b)(3).

## COUNT I
### (Declaratory and Injunctive Relief – Violation of Foreign Commerce Clause)

67.     Plaintiffs incorporate by reference paragraph 1 through 66, above, as if set forth at length herein.

68.     A dispute exists between Plaintiffs and Defendant Hancock as to whether Texas

Health & Safety Code § 161.0876(b)(3) facially discriminates against foreign commerce in violation of the Foreign Commerce Clause.

69.     Since Texas Health & Safety Code § 161.0876(b)(3) took effect on September 1, 2025, Plaintiffs have faced the untenable choice of either violating the statute by continuing to sell ENDS and other vaping products with e-liquids and/or e-liquid ingredients that may be manufactured wholly or partially in China and facing criminal prosecution, civil penalties, and/or the suspension or loss of their state e-cigarette retailer or tobacco distributor permits or by ceasing all sales of such products and suffering substantial losses of revenues, profits, inventory, and consumer goodwill for which they will be unable to recover damages against Defendant Hancock or the State of Texas because of sovereign immunity.

70.     Plaintiffs are entitled to a declaratory judgment that Texas Health & Safety Code § 161.0876(b)(3) violates the Constitution's Foreign Commerce Clause and is thus invalid and unenforceable.

71.     Because Plaintiffs are threatened with immediate and irreparable harm from enforcement of Texas Health & Safety Code § 161.0876(b)(3) and are already suffering such harm, Plaintiffs are entitled to  temporary, preliminary, and permanent injunctions enjoining Defendant Hancock from enforcing the challenged provision of S.B. 2024.

## <u>COUNT II</u>
### (Declaratory and Injunctive Relief – Violation of First Amendment)

72.     Plaintiffs incorporate by reference paragraph 1 through 71, above, as if set forth at length herein.

73.     A dispute exists between Plaintiffs and Defendant Hancock as to whether Texas Health & Safety Code § 161.0876(b)(3) violates the First Amendment as applied to the states through the Fourteenth Amendment by placing an unconstitutional burden on Plaintiffs' rights to

engage in commercial speech.

74.     Texas Health & Safety Code § 161.0876(b)(3) violates the First Amendment and places an unconstitutional burden on Plaintiffs' rights to engage in commercial speech. This provision prohibits protected commercial speech in the form of advertising and marketing communications that are not false, deceptive, or misleading even though, under the test set forth in *Central Hudson Gas & Electric Corporation v. Public Service Commission*, 447 U.S. 557, 566 (1980), the State of Texas has failed to assert, such as through a statement of findings or purpose, any substantial governmental interest in the statute's restrictions on commercial speech, much less that the restrictions directly advance such a governmental interest or that they are not more extensive than is necessary to serve that interest.

75.     Since S.B. 2024 took effect on September 1, 2025, Plaintiffs have faced the untenable choice of either violating Texas Health & Safety Code § 161.0876(b)(3) by continuing to advertise and market ENDS products with e-liquids and/or e-liquid ingredients that may be manufactured wholly or partially in China and facing criminal prosecution or by ceasing all such advertising and marketing and suffering substantial losses of revenues, profits, inventory, and consumer goodwill for which they will be unable to recover damages against Defendant Hancock or the State of Texas because of sovereign immunity. Defendant Hancock's violations of Plaintiffs' First Amendment rights through the chilling effect generated by Texas Health & Safety Code § 161.0876(b)(3) is ongoing and continuous.

76.     Plaintiffs are entitled to a declaratory judgment that Texas Health & Safety Code § 161.0876(b)(3) violates the First Amendment and is thus invalid and unenforceable.

77.     Because Plaintiffs are threatened with immediate and irreparable harm from enforcement of Texas Health & Safety Code § 161.0876(b)(3), including, but not limited to, the

18

chilling effect on lawful commercial speech that the provision imposes, Plaintiffs are entitled to temporary, preliminary, and permanent injunctions enjoining Defendant Hancock from enforcing the challenged provision of S.B. 2024. *See Healthy Vision Ass'n v. Abbott*, 138 F.4th 385 (5th Cir. 2025).

## **COUNT III**
**(Declaratory and Injunctive Relief – Violation of Plaintiff Worldwide's Fourteenth Amendment Due Process Rights)**

78.     Plaintiffs incorporate by reference paragraph 1 through 77, above, as if set forth at length herein.

79.     A dispute exists between Plaintiff Worldwide and Defendant Hancock as to whether, by refusing to renew Worldwide's soon-to-expire tobacco distributor permit unless it pays the outstanding citation for alleged violations of Texas Health & Safety Code § 161.0876(b)(3), Defendant Hancock is depriving Worldwide of due process of law under the Fourteenth Amendment to the United States Constitution.

80.     The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law."

81.     It is "well established that a reasonable, continued expectation of entitlement to a previously acquired benefit, such as a [business] license, constitutes a cognizable property interest for purposes of due process protection." *Caruso v. Tex. Med. Bd.*, No. 25-50014, 2025 U.S. App. LEXIS 22905, **12-13 (5th Cir. Sept. 4, 2025) (internal citation omitted).

82.     "An essential principle of due process is that a deprivation of . . . property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Greene v. Greenwood Pub. Sch. Dist.*, 890 F.3d 240, 242 (5th Cir. 2018) (quoting *Cleveland Bd. Of Educ. V. Loudermill*, 470 U.S. 532, 542 (1985)).

83.    Defendant Hancock has refused to renew Plaintiff Worldwide's tobacco distributor permit because Worldwide has indicated that it contests, and thus has failed to pay the civil penalty for, the citation for its alleged violation of Texas Health & Safety Code § 161.0876(b)(3).

84.    Despite Plaintiff Worldwide's submission of notice that it contests the citation and thus requests a hearing, no hearing has yet been scheduled.

85.    Were such a hearing to be scheduled, Plaintiff Worldwide would be able to contest the constitutionality of Texas Health & Safety Code § 161.0876(b)(3) on the grounds set forth in Counts I and II herein.

86.    By refusing to renew Plaintiff Worldwide's tobacco distributor permit without affording Worldwide a timely hearing at which to contest the constitutionality of Texas Health & Safety Code § 161.0876(b)(3) and thus the validity of Defendant Hancock's allegation that Plaintiff Worldwide violated the statute, Defendant Hancock is depriving Worldwide of its property without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

87.    Because Worldwide is threatened with immediate and irreparable harm from Defendant Hancock's refusal to renew its tobacco distributor permit, Worldwide is entitled to temporary, preliminary, and permanent injunctions enjoining Defendant Hancock from refusing to renew Worldwide's tobacco distributor's license based on its challenging the citation for its alleged violation of Texas Health & Safety Code § 161.0876(b)(3) and failure to pay the corresponding civil penalty before a hearing establishes Worldwide's liability therefor.

**PRAYER FOR RELIEF**

88.    Plaintiffs respectfully requests that this Court enter a judgment in their favor and against Defendant Hancock:

a.      declaring, pursuant to 28 U.S.C. § 2201, that S.B. 2024 violates Foreign Commerce Clause of the United States Constitution and the First Amendment;

b.      temporarily, preliminarily, and permanently enjoining Defendant Hancock from enforcing the provision of S.B. 2024 that amends Texas Health & Safety Code § 161.0876 and makes it a class A misdemeanor for a person to market, advertise, sell, offer for sale, or cause to be sold an e-cigarette product that is wholly or partially manufactured in or marketed as being manufactured in either China or another country designated as a foreign adversary by the United States secretary of commerce under 15 C.F.R. Section 791.4;

c.      declaring that Defendant Hancock's refusal to renew Worldwide's tobacco distributor's license violates the Fourteenth Amendment to the United States Constitution;

d.      temporarily, preliminarily, and permanently enjoining Defendant Hancock from refusing to renew Worldwide's tobacco distributor's license based on Worldwide's challenging the citation for its alleged violation of Texas Health & Safety Code § 161.0876(b)(3) and failure to pay the corresponding civil penalty before a hearing establishes Worldwide's liability therefor;

e.      awarding Plaintiffs their costs, expenses, and fees (including attorneys' fees under, *inter alia*, 28 U.S.C. § 1988); and

f.      granting such other and further relief as is necessary and appropriate.

Dated: January 30, 2026                         Respectfully submitted,

By: */s/ Tyrone L. Haynes*
   Michael D. Matthews, Jr.
   Texas Bar No.: 24051009
   Tyrone L. Haynes
   Texas Bar No.: 24076430
   McDowell Hetherington LLP
   1001 Fannin Street, Suite 2400
   Houston, Texas 77002

21

Telephone: (713) 337-5580
Facsimile: (713) 337-8850
matt.matthews@mhllp.com
tyrone.haynes@mhllp.com

Janie Rios
Texas Bar No. 24126600
MCDOWELL HETHERINGTON LLP
1000 Ballpark Way, Suite 209
Arlington, Texas 76011
Telephone: (817) 635-7300
Facsimile:  (817) 635-7308
janie.rios@mhllp.com

Eric N. Heyer*
Ryan Callinan*
THOMPSON HINE LLP
1919 M Street, NW, Suite 700
Washington, DC 20036
Telephone: (202) 331-8800
Facsimile: (202) 331-8330
Eric.Heyer@ThompsonHine.com
Ryan.Callinan@ThompsonHine.com

*to move for admission *pro hac vice*

*Attorneys for Plaintiffs*